No. 26,814.

THE STATE OF KANSAS, *Appellee,* v. W. L. WRIGHT, *Appellant.*

SYLLABUS BY THE COURT.

1. WITNESSES—*Mental Capacity—Appreciation of Nature of Oath.* In a prosecution for statutory rape, where the competency of the prosecutrix to testify as a witness was questioned, the record examined, and held that the trial court's finding touching her competency was sustained by evidence.

2. TRIAL—*Conduct of Judge—Admonition of Witness During Recess.* Where the prosecutrix broke down under cross-examination and the trial court ordered a recess of a few minutes to give her an opportunity to recover her self-control, the trial judge did not commit reversible error when during such recess and in the absence of the jury, and without objection from defendant, he admonished her touching her duty as a witness.

3. RAPE—*Instructions.* Error based upon a requested instruction considered in the light of the record and as an abstract statement of law, and held that its refusal was not error.

Appeal from Lyon district court; ISAAC T. RICHARDSON, judge. Opinion filed July 10, 1926. Affirmed.

*W. S. Kretsinger* and *Roland Boynton,* both of Emporia, for the appellant.

*C. B. Griffith,* attorney-general, *S. S. Spencer,* county attorney, and *Owen S. Samuel,* of Emporia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This defendant was convicted of statutory rape. The incidents of the crime were rather more sordid than usual. Defendant operated a taxicab in Emporia, and hauled a number of young men in and out of town on lascivious errands with a half-witted girl under eighteen years of age. One night after the girl had held carnal commerce with several of these young men, he took her out in the country by herself and had sexual intercourse with her.

Some or all of the others who had illicit relations with the girl pleaded guilty, but defendant stood trial and was convicted.

He assigns three errors on which he seeks a reversal of the judgment.

1. Defendant reproduces a considerable portion of the testimony of the prosecuting witness (the girl herself) which, he argues, tends to show that she did not know the nature of an oath and was incompetent to testify. A careful perusal of her testimony does dis-

Criminal Law, 16 C. J. p. 831 n. 61; 17 C. J. pp. 254 n. 51, 296 n. 97. Rape, 33 Cyc. p. 1502 n. 14. Witnesses, 40 Cyc. p. 2203 n. 76, 78.

close that she was subnormal in intelligence as well as in her notions of morality and womanly modesty. On her examination, to determine her competency as a witness, the record reads:

[COUNSEL FOR DEFENDANT]: "Might I ask one or two questions?

"Q. Helen, when did you take the oath to-day? A. I don't understand.

"Q. When were you sworn to-day?"

[COUNSEL FOR THE STATE]: "Speak up, if you know. Do you know? A. No, sir."

[COUNSEL FOR DEFENDANT]: "Were you put under oath—when were you put under oath to tell the truth, the whole truth, and nothing but the truth in this cause?"

[COUNSEL FOR THE STATE]: "Answer the question."

[COUNSEL FOR DEFENDANT]: "Do you know when that happened? A. No, sir."

"Q. What did you do when you were sworn, do you know? A. No, sir.

"Q. Do you know what was said to you when you were sworn? A. No, sir.

"Q. You don't know that? A. No, sir."

[COUNSEL FOR DEFENDANT]: "If the court please, I think this witness has shown she is not competent.

"BY THE COURT: Do you believe that a person that tells an untruth is in danger of being punished by God when he dies? Do you believe that? A. No.

"Q. I say, do you believe that a person who tells untruths, lies, is in danger of being punished by God when they die? Do you believe that? A. No, sir."

However, elsewhere she testified:

"Q. They want me to acquaint you with the nature of an oath. Do you understand when you take an oath in the court that you are required to testify to the truth, the whole truth, and nothing but the truth? A. Yes, sir. . . .

"Q. Did you ever go to Sunday school? A. Yes, sir. . . .

"Q. Do you believe in God? A. Yes, sir. . . .

"Q. And at Sunday school you have been taught about God? A. Yes, sir.

"Q. You have been taught that God punishes those that tell untruths? A. Yes, sir. . . .

"Q. Do you believe it is wicked to tell a lie? A. Yes, sir.

"Q. Do you solemnly swear—that means promise faithfully before men and God—that in this cause, this lawsuit now pending, you would testify to the truth, the whole truth and nothing else but the truth, so help you God? Now do you understand what that means? A. Yes, sir.

"Q. Just what does that mean, in your own words? A. It means to tell the truth, not tell—

"Q. Anything but the truth? A. Yes.

"Q. And that if you tell the truth, or an untruth, you—Who are you calling to witness that it is the truth when you say so help me God? Whom are you calling to witness that you tell the truth? A. God.

"THE COURT: The court will rule the witness is competent and understands the nature of an oath, and you may proceed with the examination."

State v. Wright.

The trial court's finding was manifestly supported to some extent by the evidence—partly in the responsiveness of the answers of the witness to the simpler sort of questions propounded to her to show her mental capacity and her sense of responsibility to tell the truth, and her ability to do so, and partly, perhaps, in the manner of her responses and in the apparent *quantum* of intelligence which she displayed before the trial court. Of necessity, the competency of a witness, so far as the question is controlled by her seeming intelligence and her sense of responsibility to tell the truth, is essentially one of fact where the trial court's judgment *on view* is much more likely to be correct than that of an appellate court whose basis for decision is limited to what may be disclosed on the printed page. (See *Devine v. Heckman*, 121 Kan. 22, 25, 245 Pac. 1037.) There is no tangible basis upon which the ruling on the competency of the prosecuting witness can be disturbed. (40 Cyc. 2200, 2203.)

2. Error is also based upon an incident which transpired during a recess of court and when the jury was out of hearing, where the trial judge admonished the prosecuting witness. She had been subjected to such a searching cross-examination that she lost her self-control and wept, and could not answer questions. The record reads:

"THE COURT: Court will recess for ten minutes. . . .

"During recess:

"THE COURT: Helen, it is my duty to tell you that you are sworn as a witness in this case to tell the truth, the whole truth, and nothing but the truth. In the course of telling that, the lawyers ask you questions, and it is your duty, under that oath, to answer the questions, so far as you have knowledge —as far as you know, and the attorney has asked you to answer this question in your own way by telling what he [defendant] may have said or did, and what you may have said or did, in your own language. Do you understand that question? A. Yes.

"THE COURT: All right; we are going to let you rest a while, and counsel may or may not urge the question, as they see fit.

"(Later.)

"THE COURT: Do you feel somewhat rested now? A. Yes.

"THE COURT: Do you think you can go ahead and answer the question now? A. Yes, sir.

"THE COURT: All right; call the jury."

Defendant's counsel argue that it was prejudicial to his rights for the trial court or judge to admonish and instruct the prosecutrix in the absence of the jury touching her duty as a witness. This court is unable to discern how this incident could have prejudiced

the defendant. Moreover, the record does not show that any question touching the propriety of this incident—or any objection to the court's remarks and admonition of the witness—was lodged by the defendant or his counsel. This assignment of error cannot be sustained.

3. A final error is based upon the refusal of the trial court to give a requested instruction touching the credibility of the prosecuting witness. The requested instruction was to this effect:

"No. 6. Evidence has been introduced as to the moral character of the prosecuting witness and as to her chastity and virtue. You are not to understand from this that a rape cannot be committed upon a woman of bad moral character. This evidence has been introduced only for the purpose of affecting her credibility as a witness upon the theory that a person of bad moral character is less likely to speak the truth as a witness than one of good moral character. So that whatever conviction this evidence may produce upon your mind as to whether she is of good moral character or bad moral character, or as to whether she is chaste or unchaste, you will treat it as a circumstance affecting her credibility to aid you in determining whether her story is true or false."

It would have been good practice for the trial court to have given a proper instruction on this particular subject (R. S. 62-1447; *State v. Younger,* 70 Kan. 226, 78 Pac. 429; *Anderson v. State,* 104 Ind. 467), but the requested instruction was open to objection in several particulars. For instance, it states that evidence was introduced as to the moral character of the prosecuting witness. No such issue was involved in the action. The prosecuting witness herself frankly avowed her promiscuous and frequent illicit relations with men and boys. Neither she nor any other witness for the state made any pretense that she was chaste and virtuous. No evidence was introduced "for the purpose of affecting her credibility as a witness." Nor should it be overlooked that this prosecutrix was not "a *woman* of bad moral character," but a female child of subnormal intelligence who was under the age of consent, that is, under the age when the law would intrust the matter of her morality and chastity to her own discretion and self-control. Moreover, the instruction is bad where it told the jury, "You *will* treat her [her admitted unchastity] as a circumstance affecting her credibility," etc. If the instruction had said, "You *may* treat her want of chastity as a circumstance affecting her credibility," it would have accorded more closely with the rule of law contended for by defendant. As framed, however, it was defective in reference to the testimony and inaccurate as a

statement of abstract law. Defendant concedes that if no instruction had been requested, it would not have been error for the court to omit it. Neither can it be judicially declared to be error for the trial court to refuse to give an instruction which assumed the existence of evidence not in the record and which included an inaccurate statement of law. An instruction covering the jury's prerogative and duty to determine the credibility of witnesses in the usual terms was given; and under the circumstances the omission of anything of greater emphasis touching the credence which might be accorded or denied to the testimony of the prosecutrix was not error.

There is no prejudicial error in this record, and the judgment is affirmed.