No. 29,439.

No. 29,600.

JESSE W. GHUMM, *Appellee*, v. HERMAN JOSCH, *Appellant*.

(298 Pac. 751.)

Opinion filed May 9, 1931.

W. H. Wagner, of Wakeeney, for the appellant.
Oscar Ostrum, of Russell, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: Two appeals in the same case have been consolidated and will be considered together and as one. It involves a dispute as to a share of a corn crop, the action being brought to recover the value of the balance of such share. The defendant, by way of cross petition, asked damages for slander in seven counts, charging the plaintiff with having told others of defendant's stealing, or having stolen, his corn. The jury returned a verdict for plaintiff for $167.90 for balance of his share of the crop and also in his favor on the cross petition.

Defendant appeals, assigning four particular errors: admission of incompetent and prejudicial evidence on cross-examination; prejudicial remarks of the court in the presence of the jury; erroneous and confusing instructions given to the jury; and refusal of the court to grant a new trial on the ground of newly discovered evidence.

Two witnesses of the defendant were asked on cross-examination if they had ever been arrested. One of them answered in the affirmative and the other in the negative. Appellant urges that such was immaterial and could serve no purpose except to prejudice the jury and lessen the credibility of the witnesses. Shortly after these questions were asked and answers given, the court called the attention of the attorneys in the case, in the presence and hearing of the jury, to the records of that court showing that the negative answer given by one of the witnesses was not correct, reading from the return of the sheriff showing he had arrested that witness on a cer-

tain date, and reproved attorneys for permitting such evidence to pass without notice when the records showed the same to be incorrect, and further stated that his attention had been called to another case in that county where the same witness had been again arrested. Appellant complains that such comment in the presence of the jury was highly prejudicial and harmful to the interests of the defendant, who had called this witness, tending to cause the jury to discredit and disbelieve the material statements of this witness, relying upon the ruling in the case of *Walker v. Coleman*, 55 Kan. 381, 40 Pac. 640, where the court did not approve of such comment and warned against the dangers thereof.

No objection was made to the questions asked these two witnesses about having been arrested and no motion was made to strike out either of the answers and withdraw them from the consideration of the jury; neither was any objection made to the comment of the court nor motion to strike it out and withdraw it from the consideration of the jury. Without such objection or motion at the time, appellant is not in a position to secure a reversal of the judgment, however serious the evidence and comment may have been.

"Objection should be made to incompetent evidence when it is admitted if its admission is to be relied on to secure the reversal of the judgment." (*Snyder v. Rankin*, 120 Kan. 186, syl. ¶ 2, 243 Pac. 287.)

The same rule applies to prejudicial remarks of the trial court in the hearing of the jury.

Again, neither of these matters was included in the motion for a new trial, nor presented to the trial court on the hearing of that motion, and without thus affording the trial court an opportunity, by a fair presentation of the errors complained of, to correct any such errors or mistake in the court where the errors occurred, they cannot constitute a basis for reversible error.

"Error assigned on the alleged prejudicial attitude of the trial judge, not fairly presented to the trial court for its due consideration on a motion for a new trial, does not constitute a basis of reversible error." (*State v. Robinson*, 124 Kan. 245, syl. ¶ 9, 259 Pac. 691.)

"Error cannot be predicated on remarks and comments of the judge in the course of a trial unless timely exception is taken thereto and brought specifically to the trial court's attention by the presentation of a motion for a new trial covering the matters complained of, so that the trial court itself may have an opportunity to rectify any prejudicial consequences which may have flowed from its ill-advised observation in the presence of the jury, if any such were made." (*American Automobile Ins. Co. v. Clark*, 122 Kan. 445, syl. ¶ 1, 252 Pac. 215.)

It is insisted by appellant that the instructions given concerning the cross petition of the defendant for damages on account of slander are conflicting and contradictory. It is conceded that instruction No. 5 correctly states the law, but it is contended that instructions 7, 8 and 9 state it differently and confuse the matter particularly as to proof of damages or injury by reason of the slanderous words alleged to have been spoken. The court in instruction No. 5 had told the jury that the language charged to have been spoken was called in law slander *per se* and if spoken falsely and maliciously was regarded as doing damage without any proof that actual damage resulted, and that in determining the injury done the jury should consider all the facts and circumstances and be guided by their own best judgment, considering, among other things, the standing and general reputation of the defendant for honesty and uprightness.

In the seventh instruction the court distinguished between nominal damages and substantial damages, concluding as to the former as follows:

". . . but if no damages are shown to have resulted, nominal damages may be found against plaintiff, whereby he may be held responsible for a slander *per se* by a verdict of one cent or one dollar on each count, if any so proved by defendant against plaintiff."

Appellant construes the last clause as referring to damages as if saying if any damages so proved. But this is not the most natural and reasonable construction of this clause. "If any" refers to slander, and the concluding clause is "if any (slander) so proved." The introductory words of the entire expression limit the proposition to the situation where "no damages are shown." No one should conclude that the court intended to close the sentence on the situation where "no damages are shown" with a provision "if any (damages) so proved." The next and closing sentence of the paragraph is confirmatory of this most natural and reasonable view of the meaning of words used. "But if it appear that any slander was committed as alleged, you may properly render a verdict for substantial damages, if such appear to be proper." The fact that the record shows that no evidence whatever was offered to prove either special or actual damages is further persuasive that the court was not referring to damages being proved, but to slander.

We have no fears about the jury understanding the correct meaning of the court in paragraph 8 of the instructions, where reference

was made to the slanderous words as follows: "steal, stealing, stole, etc." The abbreviation "etc." did not in any way extend the field nor cause the jury to speculate. A hasty reference to the cross petition reveals the use of two additional words of the same general meaning as the three mentioned by the court, viz., "stolen" and "thefts."

In paragraph 9 the court told the jury that if the rest of the conversation in which the slanderous words were used by the plaintiff about the defendant showed that he meant simply that the defendant had failed to deliver all the corn he should have delivered, "then at most there could be no more than nominal damages rendered against plaintiff." We see nothing wrong with this instruction. There was evidence of such conversations and explanations in some of the cases and it is generally recognized as a proper modification of the use of the objectionable words standing alone.

"But the word 'steal' colloquially is sometimes used where no intention of a crime is intended to be charged. And such words are not actionable *per se* if, as understood by the hearers, or as qualified by other words, or by the transaction concerning which the parties were speaking, they were not intended to charge a crime." (36 C. J. 1207.)

"Nor is a charge of stealing actionable if at the time the accusation occurs an explanation of the statement is made and the same is understood by all present to deprive the words of their criminal character." (17 R. C. L. 270.)

Appellant strongly urges error in overruling the motion for a new trial because of newly discovered evidence, which would probably have changed the result in the former trial and in a new trial if used with the other evidence.

The intensely bitter feeling existing between the plaintiff and defendant some time before the trial is given as the reason why evidence as to the size of the corn bin on plaintiff's farm and the fact that there was some corn left in the bin and never shelled, could not be procured before the trial. The new evidence consists of the dimensions of the bin and that some corn still remained in the crib not shelled. No witness ventured to estimate the quantity remaining, neither does any one state after the dimensions of the crib are furnished how many bushels it would hold, which probably may be only a matter of calculation. This was substantially all the newly discovered evidence presented, based on the inability to have access to the plaintiff's premises.

Another item of new evidence strongly relied on by defendant

was the estimate of witness Gordon as to the number of bushels of this corn at the plaintiff's place when the threshing was concluded. We know of no good reason why this evidence could not have been had at the time of the trial. This same witness testified on the trial about the shelling of the corn on plaintiff's place and said he did not know how much corn was shelled there. Now he recalls that he and others there estimated the quantity to be about 900 bushels.

No one way of determining the exact amount of corn received by the plaintiff was relied upon on the trial. Wagon-bed measurement, a bushel to the inch, weight at elevator, loss in shelled corn from ear measurement and bushels per row were mentioned in the testimony.

Two of the three parties who made the measurement of the crib after the trial were the ones who shucked, hauled and unloaded into this crib most of the corn in question, and they were both witnesses for the defendant on the trial. The approximate size of the crib which these two men nearly filled with corn themselves was certainly and necessarily a matter within their knowledge when they were testifying and not newly discovered, although they later helped to measure it.

The estimate made by those present, including the witness Gordon, might possibly be helpful in reaching a decision as to the quantity of corn received by plaintiff, but it is in no way conclusive or determinative. Several witnesses testified on the hearing of the motion for a new trial about the crib being full of corn and some on the ground and after the shelling quite a little was on the ground for some days, to which hogs and calves had access, as they observed while passing along the road about 300 feet distant from the crib and piles of corn.

Another line is developed showing that the 1,200 bushels sold by plaintiff to the elevator company was from his own farm, whereas it had been considered by the defendant as being the corn in question.

We have no hesitancy in concurring with the trial court in its conclusion that the testimony now offered does not properly come within the category of newly discovered evidence, and that with reasonable diligence and inquiry it could have been discovered in time for use on the trial.

We find no error in the giving of the instructions nor in overruling the motion for a new trial.

The judgment is affirmed.