No. 30,403.

THE STATE OF KANSAS, *Appellee,* v. GEORGE W. MOORE, *Appellant.*

(9 P. 2d 653.)

Opinion filed April 9, 1932.

*H. R. Daigh,* of Ashland, for the appellant.

*Roland Boynton,* attorney-general, *R. O. Mason,* assistant attorney-general, *H. C. Mayse,* county attorney, and *F. N. Cossman,* of Ashland, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from a conviction of manslaughter in the first degree upon an information charging the defendant with murder in the first degree.

Two errors of those assigned are particularly urged as prejudicial and entitling the defendant to a new trial. The first is the refusal to give a certain instruction requested by the defendant with reference to evidence of previous good character. Instead of giving the

one requested the court gave the one given and approved in the case of *State v. Sorter,* 52 Kan. 531, 34 Pac. 1036, the first part of which was as follows:

"You are instructed that the evidence of previous good character is competent evidence in favor of the party accused as tending to show that he would not be likely to commit the crime charged against him, and may under some circumstances be sufficient to create a reasonable doubt of his guilt when it would not otherwise exist. . . ."

The particular part of the instruction requested, of which appellant complains as being entirely omitted, is as follows: "and such evidence may also be considered by you in determining the credibility of the defendant and the weight to be attached to his testimony. . . ." The one given instructed the jury that such evidence of previous good character was competent evidence in favor of the defendant. Being in favor of defendant without restriction would include credibility of defendant and weight to be attached to his testimony. It was even stronger than saying it may be considered in determining the credibility of his testimony.

The court had immediately prior to this instruction told the jury that the defendant was a competent witness in his own behalf and his testimony should receive due and proper consideration and be generally subject to the same test as the testimony of other witnesses; and immediately thereafter further instructed them that they were the sole judges of the credibility of the witnesses and the weight to be attached to the testimony of each and all of them, and that they should give such credit to the testimony of each and all the witnesses as under all the facts and circumstances each witness would seem to be entitled. The evidence of previous good character was a part of the facts and circumstances of this case. There is no question but that the instruction requested was proper, as is supported by the decisions in *State v. Deuel,* 63 Kan. 811, 66 Pac. 1037, and *State v. Hall,* 111 Kan. 458, 207 Pac. 773, but if it is contained in substance in the instructions given, as we think it was, there is no error. In the case of *State v. Patterson,* 112 Kan. 165, 210 Pac. 654, it was said:

"In the instructions the court referred to the fact that the defendant had introduced evidence of his good reputation and character as a peaceable and law-abiding citizen; that this evidence was to be considered in connection with other evidence in determining his guilt; and if from the whole evidence, including that relating to reputation, the jury retained a reasonable doubt, he was to be acquitted." (p. 172.)

Where error was claimed in a self-defense homicide case because instructions as to the bad reputation of the deceased as to quarrelsomeness and the size, vigor and strength of certain parties were refused, the court held—

"There was no necessity for telling them that they should consider particular evidence as bearing on certain matters, especially where the connection was obvious, and for this reason no error was committed in refusing the first two requests above referred to." (*State v. Gaunt,* 98 Kan. 186, 189, 157 Pac. 447.)

"It is not reversible error to refuse to give an instruction as requested, where it is otherwise given in substance." (*State v. Moore,* 110 Kan. 732, syl. ¶ 3, 205 Pac. 644.)

"While evidence of good character may in some instances create a reasonable doubt of guilt, such evidence merely takes its place as a part of the whole case made by the evidence, and whether defendant's reputation had been good or bad, one standard of certainty was required in order to convict—certainty of guilt beyond a reasonable doubt." (*State v. Elftman,* 116 Kan. 214, 230, 226 Pac. 795.)

"It is not error for a trial court to refuse to give an instruction requested by the defendant, when it gives one containing substantially the same idea contained in the one refused." (*State v. Tucker,* 72 Kan. 481, syl. ¶ 4, 84 Pac. 126.)

"If a party has the full benefit of the proposition of law contained in an instruction he will not be prejudiced by a slight modification in its wording. Nor will a party be entitled to reversal because a modification of a requested instruction was not as full as it should have been, if on the facts and evidence in the particular case it was not misleading. . . ." (14 R. C. L. 806. See, also, *State v. McDonald,* 57 Kan. 537, 46 Pac. 966; *State v. Buffington,* 71 Kan. 804, 81 Pac. 465; *State v. Hoel,* 77 Kan. 334, 94 Pac. 267; and *State v. Wright,* 121 Kan. 507, 247 Pac. 635.)

Several assignments of error relate to the overruling of objections to questions asked by the state for the purpose of impeaching Walter L. Clark, a witness for the defendant, and in overruling the motions of the defendant to strike out and withdraw from the consideration of the jury such testimony for many reasons, among which were that it was opinion evidence, that it concerned a collateral matter, that the statement was made in the absence of the defendant, that the state was bound by the answers given on cross-examination and that it was not a proper subject for impeachment, wholly incompetent, irrelevant, immaterial and prejudicial to the rights of the defendant.

The killing of the deceased by the defendant was admitted, but the defendant justified himself by relating facts and circumstances in self-defense. The defendant and other witnesses testified as to what took place between the defendant and the deceased from the

door of the house through the yard, out the gate and down the walk to the lower end of the fence where the killing occurred, and there was a conflict as to what was said and done by them between the door of the house and where the deceased was shot. The witness Clark in his testimony substantially corroborated the testimony of the defendant as to a scuffle all the way between them for the gun, which was held between them, and later when defendant secured the gun he shot the deceased when they were from three to six feet apart. In cross-examination of the witness Clark by the state a number of questions were asked him, if he had not told the officers certain things as to what was said and done on that occasion and as to the movements of the parties, and these were asked and answered without objection as far as the record shows. Then the following question was asked and answer given over the objection of defendant:

"Q. Didn't you tell Tom Davis that you thought the whole thing over and that it was just cold-blooded murder? A. No, sir."

A motion to strike out the answer was overruled and exceptions allowed. In rebuttal, Thomas Davis, the sheriff, testified over the objection of the defendant, that at Clark's home on the morning after the killing the witness Clark said to him in substance, "Sheriff, I have studied about this matter and it is just cold-blooded murder."

In the first place, was this a mere opinion and not an impression or conclusion drawn from the things the witness saw and heard? Opinions, of course, are generally incompetent unless from experts. This witness was not an expert, but he was a witness to the entire occurrence. The killing was at his home. He followed the defendant when he left the house with the gun of the deceased in his hand. He described what he called a scuffle from the door, out the gate and down the walk, which was in direct conflict with the testimony of a witness for the state who said defendant and Clark were standing outside the fence at the lower end thereof when deceased came out of the house, and deceased walked alone through the yard out the gate and down the fence to where defendant and Clark were standing, and there the shooting followed. With the killing admitted, the main issue in the case was self-defense. Clark's testimony was wholly along that line. What he related as having seen and heard was just the opposite of cold-blooded murder. It was the desperate struggle of defendant to save his own life. Anyone

seeing and hearing everything that transpired in this connection would, by grouping those facts, naturally have an impression as to whether or not the defendant acted in self-defense, and the answer of Clark as quoted by the sheriff simply negatives the theory of self-defense. There would be no question about the use of a statement by way of impeachment after such self-defense testimony to the effect that he had told the sheriff it was not a case of self-defense. Notwithstanding the extravagant character of the term "cold-blooded murder," it simply in this case amounted to a contradiction of his self-defense testimony and does not come under the heading of a mere opinion.

"The immediate conclusions of a witness, drawn from what he saw and heard, are not rejected as opinion evidence. . . . and a witness is still testifying to facts and not to opinions or conclusions when, instead of stating separately certain facts within his knowledge, he gives a composite statement or shorthand rendering of collective facts." (16 C. J. 749.)

"In prosecution for murder it was not error to permit state's witness to testify, for purpose of impeaching accused's witness, that accused's witness had stated accused had shot down deceased like a dog." (*Higgs v. State,* 264 S. W. [Ark.] 859, syl. ¶ 7. See, also, *Rockport Coal Co. v. Barnard, Admrx.,* 210 Ky. 5.)

The case of *State v. Keefe,* 54 Kan. 197, 38 Pac. 302, is not in point, although the facts are very similar to those in the case at bar, because there the state attempted to impeach one of its own witnesses who was claimed to have made a statement different from the testimony given by him upon the trial. The appellant cites this case for the further purpose of limiting matters of impeachment to statements made in the presence and hearing of the defendant. This situation is mentioned in the opinion as a further reason for excluding the evidence but without any attempt, as we see it, to prescribe such a limitation to impeachment questions.

Appellant cites many cases to the effect that a foundation for impeachment cannot be laid on cross-examination which involves collateral issues, and urges this to be a collateral issue. We think the real issue here is self-defense, and the question in this case will meet the test prescribed in the case of *State v. Sweeney,* 75 Kan. 265, 88 Pac. 1078, cited by appellant, as follows:

"Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independent of the self-contradiction?" (p. 268.)

In other words, could the state have shown in evidence the fact

that the killing was not in self-defense? If it could, the impeaching inquiry was not concerning a collateral matter.

In the same connection it is urged that the state was under the rule bound by the answer given by the witness. This rule is limited to questions involving collateral matters, and the cases cited in support of the rule hold the matters therein to be collateral to the issues of the case. In the case of *State v. Luft,* 104 Kan. 353, 179 Pac. 553, it was held that the details elicited by cross-examination were not collateral but were of the substance of the issue, where the defense was justification of the use of force by an officer in apprehending a party who cut defendant with a knife, and the proof was the wound was not made with a knife.

In the case of *State v. Russell,* 117 Kan. 228, 230 Pac. 1053, it was held—

"Where there was evidence that the defendant was in the vicinity of a railroad freight station between 11 and 11:30 p. m., and where his wife testified, in his behalf, that he was lying on a bed at home from 10:30 to 1 o'clock, it was not error for the state to impeach her testimony by showing that on the following morning she stated that she had not seen him since the night before at 9:30 when he left to go into the country." (Syl. ¶ 3.)

Wigmore on Evidence gives the rule quoted from the Sweeney case as to what is not a collateral matter and therefore subject to impeachment, and also the following rule:

"The simple test is . . . whether it concerns a matter which you would be allowed on your part to prove in evidence independently of the self-contradiction, *i. e.,* if the witness had said nothing on the subject." (2 Wigmore on Evidence, 2d ed., 465.)

We think there was no error in overruling the objections to this impeaching evidence and in permitting it to go to the jury, nor in overruling the motion for a new trial.

The judgment is affirmed.