No. 35,358

The State of Kansas, *Appellee*, v. Ed Myers et al., *Appellants*.

(121 P. 2d 286)

Opinion filed January 24, 1942.

*Hall Smith,* of Topeka, for the appellants; *Walter T. Chaney,* of Topeka, of counsel.

*Jay S. Parker,* attorney general, *Ward Martin,* county attorney, for the appellee.

The opinion of the court was delivered by

Allen, J.: The defendant was convicted of kidnaping in the second degree, and appeals.

Our statute G. S. 1935, 21-450, under which defendant was charged, so far as pertinent, provides:

"If any person shall willfully and without lawful authority, forcibly seize, confine, inveigle, decoy or kidnap any person, with intent to cause such person . . . to be secretly confined within the same [the state] against his will, . . . he shall, upon conviction, be deemed guilty of kidnaping in the second degree and be punished by imprisonment in the penitentiary not exceeding thirty (30) years. . . ."

There is little dispute as to the facts. The complaining witness, Jess Cole, who seems to have been engaged in the bootlegging busi-

ness, got out of jail on the afternoon of July 26, 1940. At about 6 o'clock in the evening he appeared at a certain garage on West Sixth street in Topeka and later used the telephone to make a call to one Tork, another bootlegger. Cole then waited out in front of the garage for an answer to the telephone call. During this interval the defendant Ed Myers appeared. The two men had some conversation and defendant accused Cole of stealing whiskey out of Myers' automobile.

There seems to have been quite an altercation and defendant demanded that Cole go with him to see a certain woman who was said to have been robbed of some whiskey by two men at the point of a gun. The idea advanced by defendant was that he wanted to see if this woman could identify Cole as one of the men who had taken the whiskey. Cole testified he told Myers he could not go with him right then, that he had to attend to some business, but that he would meet him in thirty minutes.

About that time Cole got his telephone call and when he came out of the garage another man, named Sassman, appeared. The defendant and Sassman grabbed Cole and attempted to put him into an automobile standing at the curb. The men wrestled around for several minutes; Cole's shirt was torn and he shouted for help. Several people standing near by and in adjacent buildings testified about the fight. There was testimony that Cole shouted, "Boys, this man is highjacking me." And, "Help, help, they are highjacking me."

After defendant and Sassman had been unable to get Cole into the automobile, another man, one Yocum, came across the street and helped defendant and Sassman put Cole into the automobile. The three men succeeded in pushing Cole into the car and immediately drove away. Cole testified Sassman drove the car; that defendant and Yocum held him in the back seat; that the back cushion had slipped forward during the scuffle and that he was thrust down behind the cushion, and the two men sat one on each side of him. Cole further testified:

"After I was in the car they asked me where I had this liquor and I told them I didn't know anything about it. Yocum hit me alongside my head with his fist and cut my eye. They said they were going to take me out in the country and make me talk. . . . I had a pretty good idea of what they were going to do. I knew they were going to take me out in the country and probably beat me up right good. It seems to me they said something about making me crawl. During the time I was in the car with these men I had one leg kind of between the seat and the back rest and one out over the cushion,

and Ed had hold of one hand and Yocum the other. I was kind of sitting down in a hole there on account of the cushion being slipped out a ways."

The car containing Cole went west on Sixth street and later seems to have turned south. When it had reached the ten hundred block on Garfield avenue, it was seen by a police car which turned around and caught up with the car carrying Cole and the other men. It appears some of the people who had seen the affair in front of the garage had notified the police and that the police cruiser car had received a radio call giving the license number of the car in which the men were riding and instructing that it be picked up. The testimony showed that it was somewhat after 7 o'clock when the police made the arrest.

The men were all taken to the police station. After reaching the station one of the policemen found a .38-caliber revolver in the glove compartment of the car used by defendant and his associates. Cole testified that at the time the police car overhauled them, he saw defendant take the revolver and throw it on the front seat of the car and that he thought Sassman picked it up and put it in the glove compartment.

Detective Miler testified that when Cole got out of the car at the time the police made the arrest, he had a cut in his left eye, was beaten, and his shirt was torn.

After the arrest the defendant made a statement to the officers which was taken down by a stenographer and transcribed. This statement was in the form of questions and answers. The abstract sets out part of this statement as follows:

"I borrowed the car from the kid that runs the beer joint where Sixth and Tenth come together to scout around to see if I could find him. I knew he got arrested and have been watching for him every day; my car had broke down. I was scouting alone. I asked him for the whiskey. He had stolen some whiskey from me about a week ago."

The counter-abstract gives another portion of this statement as follows:

"Q. Where were you going to carry him? A. Take him out of town and ask him some questions. Q. Is that all you were going to do, ask him some questions? A. That's all. I was going to try to find the whiskey. Q. Did you not plan to beat him up some more? A. No. Q. Did you know where you were going? A. Going out of town."

At the close of the evidence on the part of the state, defendant moved to be discharged for the reason the state failed to prove the crime charged in the information had been committed, and the evi-

dence was not sufficient to establish the fact the defendant had committed the crime as charged. The motions were overruled and the ruling of the court is assigned as error.

From the evidence as outlined above it was clearly established that the defendant, with the aid of confederates, without lawful authority, forcibly seized the complaining witness Cole; that by force and violence Cole was pushed or thrown into the automobile; that thereupon the defendant and his two confederates entered the car and immediately drove away; that Cole was confined in the back seat by the defendant and one confederate while the car was driven by another confederate; that persons who had witnessed the abduction of Cole notified the police; that the defendant and his confederates with their captive drove many blocks through the city and were traveling south when stopped by the police car; that when Cole was removed from the car by the police he had a cut in his left eye, "was beaten and his shirt was torn," and that it was the purpose of defendant to take Cole out of town to an unknown destination.

By the express language of the statute the offense is complete when without lawful authority the person is forcibly seized with intent to secretly confine him in this state against his will.

In *State v. Higgs*, 325 Mo. 704, 29 S. W. 2d 74, the supreme court of Missouri, in construing a similar statute, stated:

"The statute, we think, provides two methods by which kidnaping may be effected. In the first method, that of willfully and without lawful authority forcibly seizing, etc., any person, the specific intent to cause such person to be sent or taken out of this state, or to be secretly confined in the same against his will, is a necessary element. The offense is complete when the person is forcibly seized with the intent . . . to secretly confine him in this state against his will." (p. 707.)

Counsel for defendant argues that there was no evidence of an intent to secretly confine Cole against his will. After careful consideration the court is of the opinion that there was evidence from which the jury could reasonably find that defendant did have such an intent.

In determining the intent with which an act is done the jury was at liberty to take into consideration a wide number of matters, including the acts of the defendant, the circumstances surrounding and preceding those acts, and it also might consider the statements made by the defendant. A man is presumed to intend to do that which he in fact does do, and he is presumed to intend the natural and probable consequences of his own voluntary act or acts. (*State v.*

*Riner,* 143 Kan. 520, 522, 54 P. 2d 990; *State v. Lammon,* 153 Kan. 822, 825, 113 P. 2d 1052; 20 Am. Jur. 316, §§ 340, 341.)

We believe that a reasonable inference from the record before us is that the defendant intended to take Cole out into the country away from all people who might interfere, and there in secret give him what might be called a third degree to make him tell where he had hidden the whiskey which defendant believed Cole had stolen. In defining the intent required in a kidnaping statute, it was said in *Doss v. State,* 220 Ala. 30, 123 So. 231, 68 A. L. R. 712:

"The dominating element of the offense of kidnaping, like the statutory felony of assault with intent to murder, is the intent with which the acts enumerated in the statute are done, to wit: 'With the intent to cause him to be *secretly* confined or imprisoned against his will, or to be sent out of the state against his will,' and the adverb 'secretly' qualifies each of the verbs 'confined' and 'imprisoned,' clearly indicating a legislative purpose to denounce as a felony any surreptitious restraint of one person by another in such sort as to deprive the subject of the crime 'of the friendly assistance of the law to relieve himself from captivity.' 1 Russ. Cr. 961; *Smith v. State,* 63 Wis. 453, 23 N. W. 879." (p. 32.)

In *People v. Hope,* 257 N. Y. 147, 177 N. E. 402, the facts were briefly as follows: Two men were just getting into their automobile at night in New York City when the defendant and two associates appeared, jumped into the car with them and compelled them at gun point to drive the car in the direction which they designated. When the car was passing a police booth at Columbus Circle one of the victims, who was driving, succeeded in driving into the booth, thereby stopping the car and attracting the attention of the policeman in the booth to the situation. The kidnapers ran, but defendant was pursued and caught by the policeman. In that case the court held that there had been a secret confinement in the automobile while it was moving through the public streets. The court discusses at some length the nature of the intent required under the New York statute, which is similar to our own statute, and said:

"The statute must be given a reasonable construction in order to promote the efficient enforcement of the criminal law, to prevent crime and to promote the ends of justice. The object of the statute and of the common law on the subject was the same, *to secure the personal liberty of citizens and to secure to them the assistance of the law necessary to release them from unlawful restraint.* (*Smith v. State,* supra; *People v. Camp,* supra.)" (p. 152.) (Italics ours.)

There is no provision in our statute which requires an intent to hold the kidnaped person for any certain length of time. At the time

Cole was seized it was still light, but night was approaching. If the jury believed that the intent of defendant was that Cole should be taken to some out-of-the-way place where no one would discover them or interfere with their proceedings, then they were justified in convicting the defendant.

Defendant makes certain other complaints concerning the trial of the case in the court below. These alleged errors have been carefully considered, but will be noticed only briefly in this opinion.

It is contended that the court erred in admitting the statement made by defendant to the officers. The objection is that it was "admitted without proper foundation and contained matters not in issue and foreign to the charge set forth in the information." It is not claimed, however, that the statement contained a confession of guilt of the crime charged, or that the statement was induced by threats or promises. The declarations made by defendant were not a confession of guilt, but on the contrary contained an explicit denial of guilt of the charge of kidnaping. The statement contained the admission of certain subordinate facts, pertinent to the issue, but which alone were insufficient to authorize a conviction of the crime charged. The declarations were exculpatory in character, contained a direct denial of guilt, and were not subject to the rules applicable to confessions. The statements were relevant to the issue and were properly admitted. (*State v. Campbell,* 73 Kan. 688, 85 Pac. 784; *State v. Turner,* 82 Kan. 787, 109 Pac. 654; *Commonwealth v. Haywood,* 247 Mass. 16, 141 N. E. 571.)

Another of defendant's complaints is that the revolver found in the glove compartment of defendant's car was not admissible as an exhibit. Cole testified about defendant having the gun in his hand and hiding it when the police approached; the policeman testified about finding the gun, and in defendant's statement to the county attorney he seems to have admitted having the gun though he claimed he "didn't have the gun out at the time." We have shown that the transcript of defendant's conversation with the county attorney was admissible. The gun was admitted as an exhibit after the admission of defendant's statement. There was no error in admitting the gun which played a part in this affair under consideration. Physical objects which constitute a portion of a transaction or play a part therein are admissible in evidence as exhibits. (*State v. Moore,* 80 Kan. 232, 102 Pac. 475; *State v. Nordmark,* 84 Kan. 628, 114 Pac. 1068.)

The defendant submitted two requested instructions to the trial court as to the elements of the crime with which he was charged. The last matter argued in this appeal is that these two requested instructions should have been given in addition to the instructions given by the court. After a consideration of the court's instructions we feel that the matters suggested by the requested instructions were fairly covered by the court. Therefore, it was not reversible error to refuse the requested instructions. (*City of Great Bend v. Shepler*, 109 Kan. 568, 201 Pac. 78; *State v. Moore*, 110 Kan. 732, 205 Pac. 644; *State v. Moore*, 135 Kan. 164, 9 P. 2d 653.)

Finding no error in the record, the judgment must be affirmed. It is so ordered.

SMITH, J., dissents.