No. 35,924

THE STATE OF KANSAS, *Appellee*, v. MACEO THOMAS, *Appellant*.

(142 P. 2d 692)

Opinion filed November 6, 1943.

*Elisha Scott* and *Lester M. Goodell,* both of Topeka, were on the briefs for the appellant.

*A. B. Mitchell,* attorney general, and *Ward Martin,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Appellant was convicted on a charge of assault with intent to maim, as defined in G. S. 1935, 21-431.

He appeals, contending first that the evidence did not justify submission of the cause to the jury under the cited section of the crimes act. The state's evidence tended to show that on election

day, November 3, 1942, one Patterson, the prosecuting witness, and another person were loading wood into a truck at the rear of a building in Topeka. The defendant drove up in an automobile and addressed Patterson thus: "Nigger, when you goin' to pay me my God-damn money?" Patterson answered that he didn't have any money. Defendant came toward Patterson with a knife in his hand. Patterson picked up a stone and hit defendant on the head and then fled. Defendant pursued him. Patterson tripped and fell among some weeds, rolled over on his back, and tried to defend himself by kicking. Defendant slashed Patterson's legs with his knife, so that it required 38 stitches to close the wounds.

Such in brief was the state's evidence to support the charge, as defined in the statute, which reads:

"Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by confinement and hard labor for a term not exceeding ten years." (G. S. 1935, 21-431.)

Appellant contends that this evidence fails to show "malice aforethought" which is an essential element of the offense. Ordinarily the only way that malice aforethought can be proved as a material element of a crime is by invoking the familiar presumption that a sane person intends to do that which in fact he does do, that he intends the reasonable consequences of his own voluntary acts. (*State v. Linville*, 150 Kan. 617, 619-620, 95 P. 2d 332; *State v. Myers*, 154 Kan. 648, 651, 121 P. 2d 286; 22 C. J. S. 93.) It was a fair inference for the jury to draw from the circumstances that defendant was maliciously predisposed towards Patterson by the language he used and by his coming towards Patterson with a knife in his hand. The statutory requisite of "malice aforethought" in the section of the crimes act under present consideration does not fix any given length of time for engendering such malice before the violent act is committed. It can sufficiently be shown from the conduct of the accused, or the circumstances attending its commission, such as the use of profane language in addressing his victim and the drawing of knife with which to intimidate or attack him.

In *State v. Wimer*, 97 Kan. 353, 356, 155 Pac. 7, it was said:

"Malice aforethought has been held to be nothing more than an unlawful or wicked intention. (*The State v. White*, 14 Kan. 538; *The State v. Fooks*,

29 Kan. 425.) Malice has been said to signify ill will, hatred or revenge toward a particular individual; as denoting that condition of one's mind which is manifested by his intentional doing of a wrongful act without just cause or excuse; any wicked or mischievous intention of the mind. (*The State v. Witt,* 34 Kan. 488, 8 Pac. 769.) Malice aforethought, a wicked intention to kill, previously and deliberately formed. (*The State v. McGaffin,* 36 Kan. 315, 13 Pac. 560.)"

In 40 C. J. 2 it is said that the term "maim" is the modern equivalent of "mayhem," and is usually defined as the infliction of some serious bodily injury. And on page 5 of the same authority it is said:

" 'Malice aforethought' as used in a statute relating to mayhem has been construed as meaning a malicious design to injure, and it has been held that it is immaterial at what period of time this malicious design is formed.

". . . It is held that even while the act must be done with malice aforethought, it is entirely immaterial at what period of time the design was formed; and in other cases, under provisions which are fully met by proof of the commission of the act, from which the law will presume that it was done unlawfully and maliciously unless the evidence shows the contrary, it does not matter that the intent was formed during the conflict."

See, also, Underhill's Criminal Evidence (4th ed.), sec. 601; 1 Bishop on Criminal Law (9th ed.), sec. 429; Kelley's Criminal Law and Practice (3d ed.), sec. 479-481.

Counsel for appellant call attention to defendant's version of the affray, but the jury was not bound to believe that version. It did choose to give credence to the state's evidence, consequently the error urged on the submission of the cause on the charge drawn under G. S. 1935, 21-431 cannot be sustained.

It is next urged that the court improperly instructed the jury as to the law of self-defense. On this point the trial court gave two instructions, No's 13 and 14. We think No. 13 fully covered the subject so far as the evidence for defendant was concerned. Indeed, in their brief, his counsel say, "In instruction No. 13 we believe the general statement of the law of self-defense is correctly stated." Their criticism is directed toward instruction No. 14, which at considerable length treated the law of self-defense as applied to cases of homicide, and added:

"An assault such as charged in this case, would be excusable or justifiable whenever a homicide would be excusable or justifiable if death had ensued from the assault."

If instruction No. 14, which is too lengthy for reproduction, is open to any fair criticism at all, it would be that it was academic,

not necessary to be given, but was nevertheless a correct statement of law; and defendant's objection to it was not that it was unnecessary or not germane to the range of legal inquiry involved in the issues, but that it should have included—that is, repeated—the substance of instruction No. 13, concerning the right of the accused, if assaulted, to defend himself. We must hold that no error is made to appear in the instructions.

It is next contended that the cross-examination of the prosecuting witness was improperly restricted. Counsel for defendant advised the court, in the absence of the jury, that he intended to ask the prosecuting witness if it was true that he, the prosecuting witness, stood charged in a divorce action then pending in the same court with certain marital misconduct by threatening to kill his wife with a rifle and with a butcher knife, and also to inquire of the same witness whether a restraining order had been issued against him—the avowed purpose being to disgrace and degrade the witness. The court intimated that such an examination of the witness would not be permitted. The record, in part, reads:

"[Counsel for defendant]: You aren't going to let me show whether he chased his wife with a butcher knife? The court: No, I am not.

"[Counsel for defendant]: I have a witness here, but you hold I can't ask him that question? The Court: For the present you can't. . . . The objection is sustained. Call the jury back."

The questions were not asked, and what answers the witness might have given were not revealed. Nor was the proffered evidence, if it can be called such, brought into the record on the motion for a new trial as required by the pertinent statutes, G. S. 1935, 60-3001 to 60-3004, and 62-1414. Consequently no error can be predicated under this assignment. (*State v. Ball*, 110 Kan. 428, 204 Pac. 701; *State v. Crane*, 136 Kan. 181, 14 P. 2d 634.)

It is finally urged that hearsay testimony was improperly admitted. A deputy sheriff testified as to the location of the spot where Patterson's legs had been slashed by defendant, that an eyewitness to the assault showed him where it took place; and he also testified that he observed that "the weeds had been tramped or mashed down." But the *locus in quo* had not been in dispute, and defendant did not object to the testimony; consequently no error based on the suggested hearsay testimony can be sustained.

The judgment is affirmed.