No. 44,517

STATE OF KANSAS, *Appellee*, v. HENRY DONAHUE, *Appellant*.

(416 P. 2d 287)

Opinion filed July 14, 1966.

*Thomas Odell Rost,* of Topeka, argued the cause and was on the brief for the appellant.

*Robert D. Hecht,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Henry Donahue, was convicted of feloniously assaulting one Donald Swallow with a 22-calibre pistol, in violation of K. S. A. 21-431, and he has appealed from that conviction. In this opinion, we will refer to appellant as the defendant and to appellee as the state.

Basically, two points are raised by the defendant: (1) that the evidence was insufficient to establish either malice aforethought or an intent to kill or maim, both of which are essential elements of the offense charged against him; and (2) that hearsay evidence was erroneously admitted. We will consider these points in sequence.

The state's evidence, much of which consisted of testimony by the victim, Donald Swallow, was to the effect that about midnight August 11, 1964, Swallow and defendant, who had been friends for

some fifteen years, bought a fifth of wine from a bootlegger and repaired to the Donahue kitchen where they had not more than three drinks of their potable purchase; that the defendant began looking for a revolver and Swallow pointed it out to him; that Swallow then said he was going to have another drink and go home, following which the defendant, from four feet away, shot him in the left side; that Swallow fell to the floor and the defendant walked over to where he lay and shot him again, this time in the left kneecap; that defendant then sat down on Swallow and pointed the gun at Swallow's head at which time the defendant's son, James, ran in and took the gun from his father.

Swallow was hospitalized for seven days and medical testimony showed that he had multiple puncture wounds involving the left chest and upper abdomen and around his left knee.

In our view, the state's evidence, as summarized above, was sufficient to establish that the defendant acted with malice aforethought when he shot Mr. Swallow and that he possessed the required intent to kill or maim the victim.

It is a familiar principle of law, long recognized and applied by the courts of this state that a man is presumed to do that which he actually does and to intend the consequences which naturally and probably flow from his voluntary acts. (*State v. Riner,* 143 Kan. 520, 54 P. 2d 990; *State v. Lammon,* 153 Kan. 822, 113 P. 2d 1052; *State v. Myers,* 154 Kan. 648, 121 P. 2d 286; *State v. Vargas,* 180 Kan. 716, 308 P. 2d 81.)

We believe the jury could fairly infer, if it thought the shooting occurred in the manner related by Swallow, that the defendant possessed the requisite intent to kill or maim Swallow at the times he shot him. It is true that Swallow's version of the affray was contradicted by the defendant, who contended at the trial that Swallow was shot in a scuffle over the gun. This conflict in the evidence, however, was resolved by the jury whose function it was to weigh the evidence and pass upon the credibility of the witnesses. (*State v. Clark,* 194 Kan. 265, 269, 398 P. 2d 327.) The jury chose to believe Swallow, not the defendant. A verdict is not to be set aside because a jury fails to believe the defendant's version, if the conviction be supported by evidence (*State v. Morrow,* 179 Kan. 63, 292 P. 2d 1094).

"Malice aforethought," which is also an essential ingredient of the offense defined by 21-431, *supra,* is a common-law term which has given rise to much learned discussion by legal luminaries. We

shall not attempt to compose a treatise on the subject or to correlate various interpretations accorded to the term.

The subject was capably discussed, and authorities cited, in *State v. Wimer,* 97 Kan. 353, 155 Pac. 7, where the court said:

". . . Malice aforethought has been held to be nothing more than an unlawful or wicked intention. (*The State v. White,* 14 Kan. 538; *The State v. Fooks,* 29 Kan. 425.) Malice has been said to signify ill will, hatred or revenge toward a particular individual; as denoting that condition of one's mind which is manifested by his intentional doing of a wrongful act without just cause or excuse; any wicked or mischievous intention of the mind. (*The State v. Witt,* 34 Kan. 488, 8 Pac. 769.) Malice aforethought, a wicked intention to kill, previously and deliberately formed. (*The State v. McGaffin,* 36 Kan. 315, 13 Pac. 560.) . . ." (p. 356.)

The existence of malice as an element of assault with intent to kill may be presumed from circumstances surrounding the assault, itself, such as the use of a deadly weapon, the character of the assault, or where the attack is unprovoked or committed deliberately (40 C. J. S., Homicide, § 78, p. 942). This court, in *State v. Dull,* 67 Kan. 793, 74 Pac. 235, had occasion to hold that malice in law may be inferred from the use of a deadly weapon.

In *State v. Thomas,* 157 Kan. 526, 142 P. 2d 692, we considered the adequacy of proof to establish malice aforethought in a prosecution brought under 21-431, *supra,* and we there said:

"Appellant contends that this evidence fails to show 'malice aforethought' which is an essential element of the offense. Ordinarily the only way that malice aforethought can be proved as a material element of a crime is by invoking the familiar presumption that a sane person intends to do that which in fact he does do, that he intends the reasonable consequences of his own voluntary acts. (citing cases) It was a fair inference for the jury to draw from the circumstances that defendant was maliciously predisposed towards Patterson by the language he used and by his coming towards Patterson with a knife in his hand. The statutory requisite of 'malice aforethought' in the section of the crimes act under present consideration does not fix any given length of time for engendering such malice before the violent act is committed. It can sufficiently be shown from the conduct of the accused, or the circumstances attending its commission, such as the use of profane language in addressing his victim and the drawing of knife with which to intimidate or attack him." (p. 527.)

As we have already indicated, it is obvious the jury believed Swallow's story of what occurred, rather than the defendant's account. Thus, it was justified in drawing an inference of malice from the evidence as well as a presumption of felonious intent.

The defendant's contention that hearsay evidence was improperly admitted arises in this way: James Donahue testified for his father

and on cross-examination denied having told the officers who arrived at the scene of the shooting that his father shot a man. The officers were called on rebuttal and testified that James had told them his father had shot a man, or had shot Mr. Swallow.

The record does not disclose any objection to the officers' testimony when given. Consequently, its admission, even if erroneous, cannot be urged as cause for reversal. K. S. A. 60-404 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

The purpose and effect of 60-404, *supra*, was discussed in *State v. Freeman*, 195 Kan. 561, 564, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981, where we said ". . . [it] codifies the prior law of this state requiring timely and specific objection for a reversal to result because of the erroneous admission of evidence . . ." This court has consistently held that objection must be made to incompetent evidence at the time it is offered before its admission can be made the basis for reversing a judgment. (*Higginbotham v. Fair*, 36 Kan. 742, 14 Pac. 267; *State v. Greenburg*, 59 Kan. 404, 53 Pac. 61; *Snyder v. Rankin*, 120 Kan. 186, 243 Pac. 287; *Ghumm v. Josch*, 133 Kan. 16, 298 Pac. 751; *State v. Edwards*, 151 Kan. 365, 99 P. 2d 836.)

Regardless of the procedural rule just mentioned, we believe the evidence admissible on rebuttal. On direct examination, James testified that after retiring for the night he heard a commotion and on getting up to see what was going on saw his father and Swallow lying on the floor with the gun between them. This evidence would tend to corroborate the defendant's claim that the gun was discharged during a struggle for its possession. To this extent, the testimony given by the witness conflicted with statements he allegedly had made shortly after the incident, *i. e.*, that his father had shot a man.

While the evidence might have been objectionable as hearsay, had it been offered by the state on its case in chief, it would appear to be admissible on rebuttal as affecting the credibility of the witness. The weight to be given James' testimony was not a collateral matter, and evidence that he had made prior statements which varied from his story on the witness stand would be proper for the purpose of testing his credibility. (*State v. Moore*, 135 Kan. 164, 9 P. 2d 653; *State v. Badgley*, 140 Kan. 349, 37 P. 2d 16.)

No error having been made to appear, the judgment is affirmed.