No. 48,001

STATE OF KANSAS, *Appellee*, v. PAUL RICHARD LASSLEY, *Appellant*.

(545 P. 2d 383)

Opinion filed January 24, 1976.

*David C. Burns*, of Speir, Stroberg & Sizemore, of Newton, argued the cause, and *Michael S. Sizemore*, of the same firm, was with him on the brief for the appellant.

*Ward P. Ferguson*, of Weelborg, Embers & Ferguson, of McPherson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant Paul Richard Lassley appeals from his conviction by jury of kidnapping (K. S. A. 21-3420), aggravated assault (K. S. A. 21-3410), and rape (K. S. A. 21-3502).

On the evening of April 25, 1973, the victim herein, a nineteen-year-old girl, was baby-sitting at a home in McPherson, Kansas. After having put the children to bed, she returned to the living room to study. At approximately 10:30 p. m. a man appeared in the doorway of the living room and demanded that she turn over the keys to her car. The intruder, later identified as defendant, was wearing a white cloth over his head and was holding a knife in one hand. She delivered the keys to defendant and he then ordered her outside, whereupon he grabbed her by the hair and pushed her down an alley. In an attempt to free herself, the victim swung at defendant and knocked the knife from his hand. A struggle ensued and the victim's hand was cut in grabbing the knife. Defendant quickly overpowered her and placed his knife across her throat, stating, "That is your last move, don't try anything like

that again." The victim was subsequently taken to some nearby shrubs where she was raped. She notified the police and later positively identified defendant in a lineup conducted at the police station. He denied the charges brought against him and at trial relied principally upon the defense of alibi.

Defendant's first claim of error relates to the admissibility of the results of a polygraph examination. During the course of trial, defendant moved the court in the presence of the jury to order the chief of police to make arrangements for him to take a lie detector test prior to the completion of trial. Defendant explained that the request had not been made sooner because he was not aware a qualified polygraph operator could be obtained without charge. He informed the court that if he was permitted to take the test he would stipulate the results would be admissible in evidence. The trial court ordered the polygraph test to be administered. The results of the test implicated defendant and, in the opinion of the examiner, they indicated his answers to many of the questions were untruthful. Upon resumption of trial, the examiner testified in detail as to the operation of the machine, the manner in which the test was given, and the results. The state then offered the test results in evidence and no objection was raised.

Defendant does not deny he stipulated the lie detector test results would be admissible, but maintains it was error to admit them because his request for a polygraph examination was based upon erroneous knowledge as to its accuracy. He claims he was unaware of the numerous faults inherent in such a testing system. In *State v. Lowry*, 163 Kan. 622, 185 P. 2d 147, we discussed the admissibility of polygraph test results in evidence. The question in that case arose when the trial court suggested both the defendant and complaining witness submit to lie detector tests. In compliance with the court's expressed desire the parties took the tests, but there was no stipulation or agreement that testimony might be admitted concerning the results of such tests. We held the subsequent admission of the results of the polygraph tests under these circumstances was reversible error. We stated:

"We are not ready to say that the lie-detector has attained such scientific and psychological accuracy, nor its operators such sureness of interpretation of figures on a dial that the testimony here in question was competent, over objection, for submission to a jury holding the fate of the defendant in its hands. It must be remembered that we are not here considering a case where there was a prior agreement that the results of the test might be admitted in evidence. While the two men agreed to take the tests, there was no such

stipulation. In fact, the witness Hoyt agreed upon cross-examination that in the conversation between counsel about taking the tests, the defendant's counsel stated that it 'wasn't for the purpose of placing before a jury.' . . ." (p. 628.)

It is evident from the foregoing quote that our holding in *Lowry* was limited to the situation where there was no stipulation the test results would be admissible. In the absence of such an agreement, the results of a polygraph test are inadmissible in a criminal proceeding. (See also, *State v. Hemminger*, 210 Kan. 587, 502 P. 2d 791; *Holt v. State*, 202 Kan. 759, 451 P. 2d 221; *State v. Lee*, 197 Kan. 463, 419 P. 2d 927.) This is in accord with the general rule followed by the great majority of jurisdictions. (29 Am. Jur. 2d, Evidence, § 831, p. 923; 22A C. J. S., Criminal Law, § 645 [2], p. 525; *State v. Ross*, 7 Wash. App. 62, 497 P. 2d 1343, 53 A. L. R. 3d 997 [1972]; *Molino v. Board of Public Safety*, 154 Conn. 368, 225 A. 2d 805 [1966]; *The People v. Boney*, 28 Ill. 2d 505, 192 N. E. 2d 920 [1963]; *State v. Valdez*, 91 Ariz. 274, 371 P. 2d 894 [1962]; *People v. Davis*, 343 Mich. 348, 72 N. W. 2d 269 [1955]; *State v. Pusch*, 77 N. D. 860, 46 N. W. 2d 508 [1950].)

A much different situation, however, is presented when the parties stipulate the results will be admissible in evidence. Despite the recognized flaws inherent in such a testing system, an accused cannot agree to the admissibility of such evidence, then object to its admission solely because of unfavorable results. We believe the better rule is to permit the introduction of the results of a polygraph examination upon the prior stipulation of the parties, after having satisfied the trial court that the examiner was qualified and the test was conducted under proper conditions. This is consistent with the holding in a growing number of cases which have considered the effect of a stipulation on the admission of polygraph tests. Proper weight is attached to the giving of a stipulation, but discretion is vested in the trial court to exclude the evidence if the test is not conducted fairly. (53 A. L. R. 3d 1005, Polygraph—Stipulation of Admissibility; *State v. Stanislawski*, 62 Wis. 2d 730, 216 N. W. 2d 8 [1974]; *State v. Towns*, 35 Ohio App. 2d 237, 301 N. E. 2d 700 [1973]; *State v. Freeland*, 255 Iowa 1334, 125 N. W. 2d 825 [1964]; *State v. Valdez*, supra.)

In the instant case the trial court complied with the stated conditions for the admission of the polygraph test results. Defendant stipulated to the admissibility on at least three separate occasions. The examiner testified extensively, both on direct and on cross-

examination, as to his qualifications and the operation of the machine. He further testified as to the questions he asked defendant and his opinion as to the truthfulness of defendant's answers. Under these circumstances the trial court did not err in admitting the results of the polygraph test.

Defendant next argues the charge of aggravated assault was duplicitous because the elements of that offense were not separate and distinct from the crimes of kidnapping and rape. The state answers defendant's contention by claiming there was a separate and distinct break in the flow of action at the time following the attempted escape of the victim in the alley. This occurred when defendant grabbed her by the neck and threatened her while holding the knife to her throat. The state claims this was the first time the victim had any fear for her life.

It is a generally accepted principle of law that the state may not split a single offense into separate parts. Where there is a single wrongful act it generally will not furnish the basis for more than one criminal prosecution. (*State v. James,* 216 Kan. 235, 531 P. 2d 70; *State v. Gauger,* 200 Kan. 515, 438 P. 2d 455.) In *State v. Lora,* 213 Kan. 184, 515 P. 2d 1086, we stressed that duplicity does not depend on whether the facts proved at trial are actually used to support the conviction of both offenses; rather, it turns on whether the necessary elements of proof of the one crime are included in the other.

Here, defendant was charged with three counts. The kidnapping charge alleged that he intentionally took the victim by force with intent to hold her to facilitate the commission of the crime of rape. The aggravated assault charge alleged that defendant threatened bodily harm to the victim with a deadly weapon while disguised in a manner designed to conceal his identity, which resulted in the immediate apprehension of bodily harm to the victim. The rape charge alleged that defendant committed the act of sexual intercourse with the victim without her consent while her resistance was overcome by force and fear.

Both the kidnapping and rape charges required proof of the element of force. In each instance the force was supplied by evidence of the conduct of defendant in ordering the victim to do acts under the implied threat of harm. The fact defendant had a knife in his hand was significant in establishing the force element of both crimes. This same act of force cannot also provide the basis for the charge of aggravated assault. To do so would be

duplicitous. We do not agree with the state's argument that there was a break in the transaction when defendant put the knife to the victim's throat. This is distinguishable from the situation in *State v. James,* supra, where there was a break in the action, resulting in separate and distinct crimes. The conduct of defendant in the instant case constitutes a single continuous transaction in which two separate and distinct offenses were committed. The act cited by the prosecution as constituting the offense of aggravated assault was part of the act of kidnapping and a prelude to the act of rape. In sum, this case presents a situation where there was a continuous act of force on the part of defendant. The act which was relied on for the charges of rape and kidnapping cannot also be used to provide the basis of a separate offense. We hold therefore that the trial court erred in refusing to dismiss the charge of aggravated assault.

Defendant's final argument relates to the propriety of instructing the jury on the presumption of intent. The trial court, over defense counsel's objection, instructed the jury:

"There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true." (Instruction No. 10.)

This is the instruction recommended in PIK Criminal 54.01. Defendant does not question that this instruction is merely a restatement of a firmly established principle of law, long recognized and applied by the courts of this state. (*State v. Donahue,* 197 Kan. 317, 416 P. 2d 287; *State v. Eye,* 161 Kan. 69, 166 P. 2d 572; *State v. Thomas,* 157 Kan. 526, 142 P. 2d 692.) He contends, however, that the instruction creating a presumption of intent is in conflict with the mandate of K. S. A. 21-3201, which places upon the prosecution the burden of proving an act to be intentional. In other words, defendant argues that by instructing the jury that a person is presumed to intend all the natural and probable consequences of his voluntary acts, the court is switching the burden upon defendant to show they were unintentional.

The presumption that a person intends all the natural and probable consequences of his voluntary acts is rebuttable, and may be overcome by evidence to the contrary. (*State v. Warbritton,* 211 Kan. 506, 506 P. 2d 1152.) This principle is consistent with the requirement that the prosecution prove the criminal intent. Intent is difficult, if not impossible, to show by definite and substantive proof. Thus, it is agreed that criminal intent may be shown by

proof of the acts and conduct of the accused, and inferences reasonably drawn therefrom. We fail to see any conflict with the statutory burden placed on the state.

The propriety of the instruction given by the trial court is evident when the instructions are considered as a whole. This is especially true when the challenged instruction is read in conjunction with Instruction No. 9, which states:

"The law places the burden on the State to prove that the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly you must assume the defendant is innocent unless you are convinced from a consideration of all of the evidence in the case that he is guilty."

The burden was properly placed on the state to prove defendant's guilt. The state was entitled to the presumption that defendant intended the natural and probable consequences of his acts and the trial court correctly instructed to that effect.

The conviction and sentence for aggravated assault is reversed and the trial court is directed to vacate the same without a hearing thereon and without defendant or his counsel being present. The conviction of kidnapping and rape is affirmed.