No. 49,750

STATE OF KANSAS, *Appellee*, v. RAWLINGS E. RACEY II, *Appellant*.

(590 P.2d 1064)

Opinion filed February 24, 1979.

*Russell Shultz,* of Shultz, Fry & Fisher, of Wichita, argued the cause, and *Daniel E. Monnat,* of the same firm, was with him on the brief for appellant.

*Michael F. McCurdy,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal from a jury verdict finding defendant Rawlings E. Racey II guilty of kidnapping (K.S.A. 21-3420[c]), aggravated assault (K.S.A. 21-3410) and carrying concealed weapons (K.S.A. 21-4201[d]). The facts are rather bi-

zarre but as they were not controverted at trial by the defendant, the jury evidently found them to be true.

This case arises from the scheming and plotting of the victim, Don Faucett, of Pittsburg, Kansas, the defendant, Racey, a resident of Riverside, Missouri, and one Jacque Koelling. Faucett and Koelling had previously had an illicit relationship despite their respective marriages to others. Faucett had lent money to Mrs. Koelling, borrowed money for her and given money to her. He also endorsed paychecks and gave them to her to be deposited, but they were cashed with no deposit being made.

After this fling had cost him his marriage and his money, and having become disenchanted with Mrs. Koelling, Faucett brought a civil action against her seeking to recoup some of his money. That action culminated in a judgment against Mrs. Koelling for $5,200.00, which remained unsatisfied at the time of the trial of this action. Prior to the filing of Faucett's civil action, Mrs. Koelling, her husband, and another couple allegedly forced their way into Faucett's father's home and assaulted Faucett and his wife in front of their children. At this encounter, according to Faucett, Mrs. Koelling threatened to kill him and previously had indicated she could get the job done for $200.00.

Subsequent to these events, and on July 5, 1977, Faucett first met the defendant Racey. As Faucett was walking to his car after work he noticed Mrs. Koelling sitting in her car parked nearby. A man got out of her car and walked toward Faucett. Faucett had seen the man once before with Mrs. Koelling. This man, later identified as the defendant, approached Faucett, asked his name and suggested they take a ride in the country to discuss their mutual bad experiences with Jacque Koelling. Defendant entered Faucett's car but departed when Faucett declined the suggestion to take a ride and indicated they could meet the following Friday. Faucett then observed Mrs. Koelling pick Racey up in her car.

That same day, Faucett contacted Doug Baker, his attorney in the civil case, and they decided to try to find out "what Jacque was up to." They decided to go ahead with the Friday meeting and to utilize the services of private detective Plank, who would "bug" Faucett's automobile in order to record Racey's conversation. Plank's services had been used to obtain evidence against Koelling in the civil action. That night Faucett received a call from the defendant, who wanted to meet that night. Faucett

declined this invitation but suggested that if Racey wanted to talk, he should call the next day or come by Faucett's father's car lot.

On July 6, Faucett went to his father's car lot early in the morning. He observed Racey and Koelling together in the vicinity and called Doug Baker. That morning private eye Plank arrived at the car lot and installed a microphone and tape recorder in Faucett's car. During the afternoon Faucett observed the defendant driving in the vicinity of the car lot and again called Baker. Baker and Plank then came to the area and positioned themselves near the car lot where they could observe the activities.

At Plank's suggestion, Faucett drove to several business locations in the hope that Racey would approach him for their meeting. At the Wal-Mart store parking lot, defendant approached Faucett's car, knocked on the window and got in.

Faucett and Racey left the lot with Baker and Plank tailing them. Baker and Plank were going to provide protection for Faucett and the three had agreed upon a prearranged signal whereby Faucett was to open his car door if he was in trouble. When defendant got in the car, he pulled a .357 magnum revolver from under his coat, pointed it at Faucett and directed him to drive. Faucett testified that he asked Racey what the gun was for and Racey replied that "he didn't want to take any chances on messing this up or that he had screwed up the last two contracts he had and he wasn't about to screw the third one up." Upon arriving at a location in the country near the Kansas-Missouri border, Racey directed that they stop and he then produced two pills and ordered Faucett to take them. Faucett put one pill in his mouth but did not swallow it and then Baker and Plank came to the rescue.

Baker pulled in behind Faucett's car and all four got out of the cars. Faucett's first utterance was "he has got a gun." Faucett testified that though he was terrified he hadn't used the prearranged signal or even looked in the rear view mirror because he was afraid Racey would notice and turn around to see Baker and Plank.

Plank overpowered the defendant, disarming him in the process. Plank testified he asked Racey whether he had threatened Faucett, and whether he had threatened to kill him, and that Racey answered "Yes" to both questions.

Plank and Baker took Racey to the police station where he voluntarily produced a .38 caliber weapon which had been strapped to his ankle. Racey was also wearing an empty shoulder holster. Mrs. Koelling was charged with aiding and abetting and convicted in a separate trial.

Defendant was advised at length, by his attorney and by the trial judge, of his constitutional rights but elected to present no evidence to refute the foregoing story propounded by Faucett, Baker and Plank. Defendant then moved for a directed verdict of acquittal at the end of the State's evidence and again in post-trial motions. The motions were overruled. The defendant, age twenty-four, had no previous criminal record and had been a security guard at Kansas City International Airport and a reserve police officer in Riverside, Missouri. Since a firearm was involved, he was sentenced under the mandatory provisions of K.S.A. 1978 Supp. 21-4618.

At the outset it is noted that appellate counsel for the defendant was not trial counsel. Several points are raised on appeal.

Appellant's first point is the trial court committed error in not granting the motions for acquittal as there was insufficient evidence to convict defendant.

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. . . ." *State v. Gustin,* 212 Kan. 475, Syl. ¶ 3, 510 P.2d 1290 (1973). See also *State v. Holt,* 221 Kan. 696, 700, 561 P.2d 435 (1977); *State v. Colbert,* 221 Kan. 203, 209-210, 557 P.2d 1235 (1976).

"On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence was sufficient to form a basis for a reasonable inference of guilt." *State v. Duncan,* 221 Kan. 714, 719, 562 P.2d 84 (1977); *State v. Wilson,* 220 Kan. 341, Syl. ¶ 1, 552 P.2d 931 (1976).

"In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction stands." *State v. McCollum,* 211 Kan. 631, 643, 507 P.2d 196 (1973).

The evidence in this case, strange as it may have been, was not controverted by the defendant and we must conclude was sufficient to form a basis for a reasonable inference of guilt.

Next, appellant contends there could be no kidnapping in this

case because the alleged victim sought out the defendant with the intention of voluntarily accompanying him.

K.S.A. 21-3420 provides in part:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

. . . .

"(c) To inflict bodily injury or to terrorize the victim or another; . . ."

It has been held that where the victim has at first willingly accompanied the defendant, the latter may nevertheless be guilty of kidnapping if he subsequently restrains his victim's liberty by force and compels the victim to accompany him further. See *People v. Camden,* 16 Cal. 3d 808, 129 Cal. Rptr. 438, 548 P.2d 1110 (1976); *Matter of Appeal in Maricopa Cty. J.A. No. J-72472 S,* 25 Ariz. App. 377, 543 P.2d 806 (1975). In the instant case, Faucett testified he was frightened and terrorized, taken into the country at gunpoint and ordered to take some sort of drugs or pills. The evidence is sufficient to support the jury's finding that a kidnapping took place. Intertwined with this point, appellant argues that the court committed error in giving certain instructions and in failing to give others. The record discloses there was no objection to the instructions given and the only one requested was an instruction on entrapment. Appellant's arguments that his conviction of kidnapping should be reversed are without merit.

Next, appellant argues that he cannot be convicted of both kidnapping and aggravated assault under the circumstances of this case. We agree. In *State v. Lassley,* 218 Kan. 758, 545 P.2d 383 (1976), we held that a single and continuing act of force could not form the basis for the crimes of aggravated assault and kidnapping. Lassley, armed with a knife, accosted a young woman in the home where she was baby-sitting. He ordered her outside, placed the knife at her throat, and subsequently took her to some nearby shrubs where she was raped. He was charged and convicted of kidnapping, aggravated assault, and rape. We said:

"It is a generally accepted principle of law that the state may not split a single offense into separate parts. Where there is a single wrongful act it generally will not furnish the basis for more than one criminal prosecution. . . .

. . . .

"Both the kidnapping and rape charges required proof of the element of force. In each instance the force was supplied by evidence of the conduct of defendant in ordering the victim to do acts under the implied threat of harm. The fact defendant had a knife in his hand was significant in establishing the force element

of both crimes. This same act of force cannot also provide the basis for the charge of aggravated assault. . . . The conduct of defendant in the instant case constitutes a single continuous transaction in which two separate and distinct offenses were committed. The act cited by the prosecution as constituting the offense of aggravated assault was part of the act of kidnapping and a prelude to the act of rape. In sum, this case presents a situation where there was a continuous act of force on the part of defendant. The act which was relied on for the charges of rape and kidnapping cannot also be used to provide the basis of a separate offense. We hold therefore that the trial court erred in refusing to dismiss the charge of aggravated assault." (pp. 761-762.)

Here, defendant Racey continually threatened Faucett with a gun from the time he got into the car throughout the drive into the country and while he was attempting to force Faucett to take the pills. There was one continuing unbroken act of force. For the reasons stated in *Lassley,* we conclude that the conviction for aggravated assault must be reversed.

Appellant's final points are that he could not be convicted of carrying concealed weapons because he was a reserve police officer on the Riverside, Missouri, police force and that he should be granted a new trial because of adverse newspaper publicity during trial. We have carefully considered both points and find them to be without merit.

The conviction of aggravated assault is reversed, the sentence set aside and the appellant discharged from such charge. The convictions for kidnapping and carrying concealed weapons are affirmed.

McFARLAND, J. dissents as to the reversal of the conviction for aggravated assault, together with the corresponding portions of the opinion, and concurs with the balance of the opinion.