No. 58,678

STATE OF KANSAS, *Appellee,* v. TERLE SLANSKY, *Appellant.*

(720 P.2d 1054)

Opinion filed June 13, 1986.

*Judith Messenger,* assistant appellate defender, of Topeka, argued the cause and *Benjamin C. Wood,* chief appellate defender, of Topeka, was with her on the brief for appellant.

*Anita M. Rodriguez,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Appellant, Terle Slansky, appeals his jury convictions of rape, K.S.A. 1985 Supp. 21-3502; aggravated burglary, K.S.A. 21-3716; attempted rape, K.S.A. 1985 Supp. 21-3301, K.S.A. 1985 Supp. 21-3502; and aggravated assault, K.S.A. 21-3410.

Slansky's convictions stem from two different incidents. The first incident, resulting in charges of attempted rape and aggravated assault, occurred in the early morning hours of July 8, 1984. The victims, Ms. P and Ms. S, had been to a party where they each had several beers. They left the party about 12:30 a.m., with Ms. P driving and Ms. S asleep in the back seat.

As they were driving towards home (Logan) on highway 183, another car came up beside their car but did not pass. The other

car then pulled back behind the car driven by Ms. P and repeatedly bumped her back bumper. Responding to the threat, Ms. P finally stopped her car and the other car pulled up alongside. The man in the other car got out of his car, ran toward Ms. P, grabbed her by the arm and said, "I want your tits." Her attacker then grabbed at her blouse and ran his hands between her legs on the inside of her thighs.

Ms. P began screaming, trying to get Ms. S to wake up. When Ms. S woke up, the attacker was trying to pull Ms. P out of the car and was telling her, "You're going to come with me or I'll kill you." Ms. S then began yelling, telling the man to leave Ms. P alone. When Ms. P finally kicked free, their attacker then opened the back door of the car and tried to drag Ms. S out of the car by her ankles. The man told her, "You're coming with me," but Ms. S was also able to kick free. Ms. P then drove straight home and told her parents what had happened.

The second incident, resulting in charges of rape and aggravated burglary, occurred two weeks later at approximately 2:00 a.m. on July 21, 1984. The victim, Ms. G, was lying in bed watching television when a sheet was thrown over her head and she was shoved on her stomach. Her attacker then rolled her over on her back and shoved a pillow into her face. He also took a sharp blade and shaved some hair from her arm, after which he placed the blade at her throat and said, "Shut up or I'll kill you." A lengthy struggle ensued, and the victim was finally thrown to the floor and raped by her assailant. The man then demanded she perform oral sex on him. When she refused, he beat her across the face and the side of her head and raped her a second time. Following these acts, the attacker sat on top of Ms. G, ejaculated all over her and then took his hand and rubbed the fluid all over her face and hair. He then searched through her purse and wallet. He took nothing but told her if she went to the police he'd kill her. He then pulled her to the bathroom, where she began vomiting. The attacker left through the back door.

Other facts will be discussed where relevant.

The appellant was charged with rape and aggravated burglary in connection with the incident involving Ms. G and with attempted rape and aggravated assault in connection with the incidents involving Ms. P and Ms. S. The appellant was also

charged with two counts of aggravated kidnapping, but these charges were later dismissed.

Trial was held January 15-17, 1985, and Slansky was convicted of attempted rape and aggravated assault. The jury was unable to agree on a verdict on the charges of rape and aggravated burglary and a mistrial was declared. After a second trial, the appellant was convicted on both remaining charges.

The court sentenced Slansky as follows: fifteen to twenty years for rape, five to ten years for aggravated burglary, five to ten years for attempted rape and three to five years for aggravated assault, with sentences to run concurrently.

Appellant first argues the district court lacked jurisdiction to convict him of aggravated assault because the information did not allege every essential element of the crime and therefore was fatally defective.

The elements of assault, the basis of aggravated assault, are set forth in K.S.A. 21-3408:

"An assault is an intentional threat or attempt to do bodily harm to another *coupled with apparent ability* and resulting in immediate apprehension of bodily harm. No bodily contact is necessary." (Emphasis added.)

Count Four of the information states:

"That on or about the 8th day of July, 1984, the said Terle Slansky, within Rooks County, Kansas, then and there being, did then and there contrary to the Statutes of the State of Kansas, unlawfully, feloniously, willfully, and intentionally threaten to do bodily harm to another, to-wit: [L. K. S.], with the intent to commit a felony, to wit: Kidnapping, and which resulted in the immediate apprehension of bodily harm to the person of said [L. K. S.], contrary to K.S.A. 21-3410(c), Class D Felony, Penalty Sections K.S.A. 1984 Supp. 21-4501(d) and K.S.A. 1983 Supp. 21-4503(1)(b)."

The information did not allege Slansky had the apparent ability to do bodily harm and therefore did not allege every essential element of the crime.

In a felony action, the indictment or information is the jurisdictional instrument upon which the accused stands trial. *State v. Bird,* 238 Kan. 160, 166, 708 P.2d 946 (1985). A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void. *State v. Robinson, Lloyd & Clark,* 229 Kan. 301, 304, 624 P.2d 964 (1981). If the facts alleged in an indictment do not constitute an offense within the terms and meaning of the statute upon which it is based, the information is fatally defective. *State v. Howell & Taylor,* 226 Kan. 511, 513, 601 P.2d 1141 (1979).

The State, in its brief, concedes that the information in this case was defective as to the aggravated assault charge. Accordingly, the appellant's conviction for aggravated assault is reversed. No remand is required, however, because the sentence for aggravated assault is not controlling.

The appellant next contends the trial court erred in failing to modify his fifteen-year minimum sentence. Specifically, he suggests the trial judge based his sentencing decision on incorrect information. At the hearing on appellant's motion for modification, the trial judge made the following statements:

"THE COURT: Mr. Holliday, I am quite aware of how the state's minimum time works and their good time credit. With a fifteen year minimum controlling sentence, and assuming that Mr. Slansky gets all of his good-time credit, he is only going to serve eight years. If I reduce it to a five-year controlling minimum sentence then he would only serve about two years."

According to administrative regulations in effect at the time of sentencing and the commission of the crime, a fifteen-year minimum sentence requires an inmate to serve at least 10 years, 7 months and 15 days. A five-year minimum sentence requires an inmate to serve at least three years, six months and twenty-two days. K.A.R. 44-6-117. Thus, the trial judge's statements regarding good time credit and the minimum time to be served were not completely correct.

However, this does not mean the court abused its discretion in sentencing the appellant. We have held a sentence imposed by a trial court will not be disturbed on appeal on the ground it is excessive provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and is not the result of partiality, prejudice, oppression or corrupt motive. *State v. Cunningham,* 236 Kan. 842, 846, 695 P.2d 1280 (1985).

Here, the sentence imposed by the trial court was clearly within the limits prescribed by law and there is no evidence the sentence was the result of partiality, prejudice, oppression or corrupt motive. Moreover, in denying appellant's motion for modification for sentence, the trial court made the following statement:

"Now, I think what happened to [Ms. G] was violent and sick and terrible and I can only conclude because the jury so concluded, that your client was responsible for that. He needs more time in prison than two to three years which he would get if there were a five-year controlling sentence."

One of the factors to be considered by the trial court in fixing minimum terms of imprisonment is the extent of harm caused by the defendant's criminal conduct. K.S.A. 21-4606(2)(b). The trial court was justified in placing emphasis upon this factor in sentencing the appellant. We find no abuse of discretion. This argument is without merit.

Appellant next argues the trial court erred in not suppressing the in-court identifications of the appellant by Ms. P and Ms. S because the identifications were irreparably tainted by a suggestive lineup. Appellant does not claim the in-court identification by Ms. G was tainted.

Although no photograph of the lineup was taken, appellant argues the lineup was impermissibly suggestive because five of the seven men did not look anything like the man the victims described to the officers. At a hearing on the motion to suppress, Officer Connie Drotts, who selected the seven men for the lineup, gave an individual description of all seven men in the lineup. At trial, she testified that all seven individuals fit within the following description: white male, 200-270 pounds, light brown to medium brown hair, age 19 to 30 and dressed casually. Rooks County Sheriff Ronald Stithem also gave an individual description of each man in the lineup as well as a categorical description. Stithem's testimony corroborated Officer Drotts' testimony.

As support for his argument the lineup was impermissibly suggestive, appellant relies upon the testimony of Ms. P and Ms. S that only two men in the lineup looked like the man they described to investigating officers. Ms. S also testified that she was acquainted with one of the men in the lineup.

The trial court found nothing in the lineup procedure impermissibly suggestive and overruled the motion to suppress the in-court identification.

We have held that a reliable in-court identification may be capable of standing on its own despite a previously deficient pretrial confrontation. *State v. Mitchell*, 234 Kan. 185, 187, 672 P.2d 1 (1983); *State v. Marks*, 231 Kan. 645, 649, 647 P.2d 1292 (1982). The factors to be applied in determining the reliability of the courtroom identification are: (1) the opportunity of the witness to view the accused at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior de-

scription of the accused, (4) the level of certainty displayed by the witness at the confrontation, and (5) the length of time between the crime and confrontation. *State v. Ponds,* 227 Kan. 627, 630, 608 P.2d 946 (1980).

Ms. P identified the appellant at both the preliminary hearing and trial. At trial, she testified she was able to clearly observe the face of the appellant because the inside car light was on as well as the car headlights and her attacker's face was only an arm's length away from her own. This in-court identification occurred some six months after the incident occurred.

Ms. S also identified the appellant at trial. She had an opportunity to observe her attacker at close range when he opened the back door and tried to drag her out of the car by her ankles.

Under these circumstances, the in-court identifications by Ms. P and Ms. S stand on their own despite criticism of the lineup identification. This issue is without merit.

The final issue is whether the appellant's due process rights were violated by the prosecutor's refusal to allow defense counsel's request for a photograph of the lineup.

Prior to the lineup, the appellant's attorney requested that a photograph of the lineup be taken so that the appearance of the panel on that date would be preserved for trial. His request was denied. The trial court, in ruling on the motion to suppress the lineup, noted that a picture of the lineup *should* have been taken. However, he pointed out that if defense counsel felt such a photo was critical to the preservation of testimony, he could easily have contacted a district judge and obtained an order mandating that a photo be taken.

While it is clearly better practice to take photographs of lineups, there is no authority for appellant's contention that he had a constitutional right to have the lineup photographed. We have held that the right to counsel does not attach to post-arrest, pre-indictment lineup or photographic display situations. *State v. McCollum,* 211 Kan. 631, 638, 507 P.2d 196 (1973). Adversarial judicial criminal proceedings must have been initiated before the United States Constitution Sixth Amendment right to counsel attaches. *State v. Bristor,* 236 Kan. 313, 320, 691 P.2d 1 (1984). Thus, where the appellant did not have a right to counsel at the line-up, it is certain he did not have a constitutional right to photograph the lineup. What is more, the jury had ample evi-

dence before it from which to determine whether the lineup identification was properly conducted. Rooks County Sheriff Ronald Stithem and Deputy Sheriff Connie Drotts both testified regarding the descriptions of the individuals in the lineup and the manner in which it was conducted. The same type of testimony was give by the victims of the crimes, Ms. P, Ms. S and Ms. G. The appellant's due process rights were not violated by the failure to require a photograph of the lineup.

The judgment of the trial court is reversed in part and affirmed in part.